## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

FEDERICO ALFARO and F & M
TRUCKING CARRIER SERVICES, INC.,

                Plaintiffs,

vs.                                                                    Case No. 3:14-cv-977-J-32JRK

ANHEUSER-BUSCH, LLC,

                Defendant.

_____/

## REPORT AND RECOMMENDATION[1]

### I. Status

      This cause is before the Court on Defendant's requests for sanctions against Plaintiffs, including dismissal with prejudice, in Defendant's Renewed Motion for Sanctions (Doc. No. 49), filed April 19, 2016, and in Defendant's Motion to Compel Responses to Second Request for Production and for Sanctions (Doc. No. 46), filed March 25, 2016. Both of these motions were previously granted to the extent they sought sanctions against Plaintiffs, see Orders (Doc. No. 51, entered April 27, 2016; Doc. No. 64, entered June 3, 2016), and all that remains is for the Court to determine the appropriate sanction(s) to impose. Defendant seeks dismissal of the case with prejudice as a sanction for Plaintiffs' repeated failures to participate meaningfully in discovery and to comply with this Court's Orders compelling discovery. Hearings on sanctions and other matters were held before the undersigned on

---

[1]      "Within 14 days after being served with a copy of [a report and recommendation on a dispositive issue], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." Id. A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. See Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

June 1, 2016 and September 14, 2016.  See Minute Entries (Doc. Nos. 63, 76).  The issue of the appropriate sanction(s) is now ripe for consideration.

Although previously represented by counsel, as explained further below, both Plaintiffs are now without counsel.  Plaintiff Federico Alfaro ("Mr. Alfaro") is proceeding pro se.  As to the corporate Plaintiff, F & M Trucking Carrier Services, Inc. ("F & M Trucking"), a corporation cannot proceed without counsel.  Rule 2.03(e), Local Rules, United States District Court, Middle District of Florida; Palazzo v. Gulf Oil Corp., 764 F.2d 1381, 1385 (11th Cir. 1985).  Despite previously being warned of this requirement and directed to retain counsel, F & M Trucking has failed to do so.  Accordingly, regardless of whether dismissal of the case is warranted as a sanction here, the corporate Plaintiff's claims are due to be dismissed.

In any event, upon review of the file as a whole, the undersigned recommends dismissal of the case with prejudice for the reasons discussed below.

## II.  Background

### A. Overview

Mr. Alfaro and F & M Trucking (a now-dissolved company owned solely by Mr. Alfaro) initiated this action in state court on July 9, 2014, and it was removed to this Court on August 14, 2014, on the basis of this Court's diversity jurisdiction.  See Anheuser-Busch, LLC's Notice of Removal (Doc. No. 1).  At the time, Plaintiffs were represented by attorney Todd M. Davis.  Plaintiffs' two-count Complaint for Damages (Doc. No. 2; "Complaint" or "Compl.") centers on allegations that an employee of Defendant Anheuser-Bush, LLC  damaged Plaintiffs' tractor-trailer with a forklift during a delivery to Defendant's brewery in Jacksonville,

2

Florida,[2] and that following the incident, Defendant instructed C.H. Robinson Worldwide, Inc. ("C.H. Robinson") to cease its business relationship with Plaintiffs. See generally Compl. According to the Complaint, the majority of all of Plaintiffs' loads from the four previous years were brokered by C.H. Robinson, id. at 5 ¶ 35, and C.H. Robinson also hired Plaintiffs for the delivery in question, id. at 3 ¶ 12. Count I is for negligence based on the trailer damage, id. at 5-6 ¶¶ 42-45, and Count II is for tortious interference with an advantageous business relationship, id. at 6 ¶¶ 46-49.

On May 12, 2015, Plaintiffs' counsel, Mr. Davis, moved to withdraw as Plaintiffs' counsel due to "a fundamental disagreement as to the actions that should be taken in this case." Motion to Withdraw as Counsel (Doc. No. 19) at 1. The motion was granted on May 18, 2015. Order (Doc. No. 20). On July 23, 2015, Plaintiffs advised the Court that they had retained substitute counsel. See Plaintiff's, Federico Alfaro and F & M Trucking Carrier Services, Inc.'s Motion for Extension of Time (Doc. No. 23). Plaintiffs' substitute counsel, Gabrielly G. Valenzano, filed her Notice of Appearance of Counsel (Doc. No. 25) on August 17, 2015. Ms. Valenzano represented Plaintiffs until June 3, 2016, when she was granted leave to withdraw. See Order (Doc. No. 64) at 2.

The sanctions issue before the Court grew out of two overall discovery disputes, each involving Defendant's respective requests for production of documents from Plaintiffs. The two disputes, labeled "Track 1" and "Track 2," are set out in greater detail below, followed by an account of the hearings on sanctions and other related filings, Orders, and proceedings.

---

[2]     Later in these proceedings, Mr. Alfaro also asserted that his trailer was initially damaged by a forklift when he picked up the shipment a day earlier at a facility in Virginia. See, e.g., Defendant's Renewed Motion for Sanctions (Doc. No. 49) (referencing this allegation from Mr. Alfaro's deposition). The Virginia incident is not alleged in the Complaint.

**B. Relevant Discovery Disputes**

1. Track 1

On January 4, 2016, Defendant filed a Motion to Compel Responses to Requests for Production and for Sanctions (Doc. No. 35), seeking to compel Plaintiffs to respond to Defendant's First Request for Production that was served on September 18, 2015.[3] The motion was followed by a response, a reply, and a sur-reply. See Plaintiffs', Federico Alfaro and F & M Trucking Carrier Services, Inc.'s, Response to Defendant's Motion to Compel Responses to Production and for Sanctions (Doc. No. 36), filed January 15, 2016; Defendant's Reply in Support of Its Motion to Compel (Doc. No. 41), filed February 3, 2016; Plaintiffs', Federico Alfaro and F & M Trucking Carrier Services, Inc.'s, Re-Reply in Opposition to Defendant's Motion to Compel Responses to Production and for Sanctions (Doc. No. 42), filed February 18, 2016.

On February 19, 2016, the undersigned entered an Order (Doc. No. 43), granting in part and denying in part Defendant's Motion to Compel Responses to Requests for Production and for Sanctions (Doc. No. 35). Defendant's motion was granted "to the extent that Plaintiffs [were] directed to conduct a thorough search for and to produce all relevant documents responsive to Defendant's requests no later than March 1, 2016." Order (Doc. No. 43) at 4. Plaintiffs were further directed to "state specific reasons for failing to provide" any particular responsive documents that were not provided. Id. Defendant's motion was

---

3        According to Defendant's Reply in Support of Its Motion to Compel (Doc. No. 41), "Within minutes of the Motion's filing, Plaintiffs served written responses to the Request for Production [on January 4, 2016]." Defendant's Reply in Support of Its Motion to Compel (Doc. No. 41) at 3. But Defendant explained that Plaintiffs' late response was evasive and incomplete: "Plaintiffs objected to every single request and produced a very limited number of documents, totaling only 156 pages, a third of which were documents that had previously been produced by Defendant to Plaintiffs." Id. at 3 (footnote omitted). In response to most of the requests, according to Defendant, Plaintiffs responded vaguely that they "could not locate and obtain" the documents. Id. at 4; see Doc. No. 41-2 (copy of Plaintiffs' Response to Defendant's Request for Production to Plaintiffs).

4

otherwise denied.  Id. at 4.  The undersigned declined to impose sanctions at that time.  Id. at 3.  Plaintiffs were "advised, however, that discovery violations in the future may result in sanctions."  Id.

On March 8, 2016, Defendant filed its Motion for Sanctions for Failure to Comply with Court's February 19, 2016 Order [] (Doc. No. 44; "Motion for Sanctions"), asserting that despite this Court's Order (Doc. No. 43), Plaintiffs still failed to produce any responsive documents other than "a one-page document."  Motion for Sanctions at 2 (emphasis omitted).  Defendant correctly characterized Plaintiffs' March 1, 2016 response to Defendant's discovery requests as follows:

> For the majority of requests, Plaintiffs contend they were unable to obtain responsive records for one of three reasons: (1) it would be unduly burdensome for Plaintiffs to pay the costs associated with obtaining responsive records; (2) Defendant could obtain the records by subpoenaing third parties, and (3) with respect to some records, they were inside a storage unit and it would be unduly burdensome for Plaintiff Alfaro to "take everything out of the warehouse" to locate the documents. For other requests, Plaintiffs simply respond they "could not locate and obtain" responsive documents without providing any specific explanation of what efforts they undertook to locate and obtain such records, in violation of the Court's Order.

Id. at 2-3; see Doc. No. 44-3 (Plaintiffs' (Second Amended) Response to Defendant's Request for Production to Plaintiffs).

In opposition to the Motion for Sanctions, Plaintiffs contended, among other things, that dismissal is a last-resort sanction that was inappropriate here because "not all remedies ha[d] been exhausted."  Plaintiffs', Federico Alfaro and F & M Trucking Carrier Services, Inc.'s, Response to Defendant's Motion for Sanctions (Doc. No. 45), filed March 22, 2016, at 3.  Plaintiffs requested "an additional opportunity of twenty (20) days to obtain documents without the imposition of sanctions or payment of attorney's fees . . . ."  Id. at 4.  In addition,

5

Plaintiffs' counsel, Ms. Valenzano, made clear in the response that she herself should not be sanctioned for Plaintiffs' noncompliance, stating as follows:

> Since the entry of this Court's Order Plaintiffs' counsel has repeatedly reminded Plaintiffs that responses to the document requests had to be provided by March 1, 2016, otherwise Plaintiffs would be subject to sanctions. However, Plaintiffs repeatedly informed [their] counsel that Plaintiffs could not obtain some documents due to monetary issues, others because it was unduly burdensome to do so, others because Plaintiffs believed Defendant could obtain themselves, and others because Plaintiffs were unwilling to obtain. Plaintiffs' counsel should not be held responsible for Plaintiffs['] actions.

Id. at 2.

On March 25, 2016, the undersigned denied without prejudice Defendant's Motion for Sanctions, giving Plaintiffs "one additional opportunity to produce all responsive documents, as previously directed," while warning Plaintiffs that failure to comply by April 14, 2016 would subject them to sanctions.  Order (Doc. No. 47) at 3.

Subsequently, on April 19, 2016, Defendant filed a Renewed Motion for Sanctions (Doc. No. 49), stating, "Plaintiffs completely failed to comply with the Court's March 25, 2016 Order," in that "Plaintiffs did not provide any additional documents and did not provide any reasons for failing to produce any responsive documents."  Renewed Motion for Sanctions at 3.  Defendant also noted, "Plaintiffs appear to have little investment in this case, as they have failed to take a single deposition, issue a single subpoena or engage an expert."  Id. at 9.  Defendant asserted that "it is unfair for Defendant to have to continue in this one-sided affair."  Id.

As sanctions for Plaintiffs' noncompliance with discovery requests and Orders, Defendant sought dismissal of the case pursuant to Rule 37(b)(2)(A) and the Court's inherent authority, on the basis of Plaintiffs' willfulness and bad faith in refusing to participate in discovery and in ignoring the Court's Orders.  Id. at 6-12.  Defendant argued lesser sanctions

6

would be futile.  Id. at 8.  In the event the Court declined to dismiss the case, Defendant alternatively asked the Court to do the following:

> (1) order Plaintiffs to execute all necessary authorizations, (2) order Plaintiffs' counsel to pay the costs associated with obtaining responsive records and to obtain such records within a specified time, (3) give an adverse inference with respect to any relevant responsive document not produced by Plaintiffs, (4) prohibit Plaintiffs from introducing into evidence any document which was requested by Defendant during discovery and not produced by Plaintiffs, and ([5]) award Defendant reasonable expenses, including attorney's fees incurred in filing the instant Motion.

Id. at 12-13.  Plaintiffs did not file a response to the Renewed Motion for Sanctions.

### 2.  Track 2

On March 25, 2016, Defendant filed its Motion to Compel Responses to Second Request for Production and for Sanctions (Doc. No. 46), seeking to compel Plaintiffs to produce documents in response to Defendant's Second Request for Production that was served on February 12, 2016.  Defendant stated in the motion that Plaintiffs did not produce any documents or respond in any way to the Second Request for Production, and Defendant noted this was "a continuation of Plaintiffs' refusal to participate and cooperate in good faith in discovery in this matter."  Id. at 2.  Defendant argued that Plaintiffs' bad-faith conduct in discovery warrants sanctions, including dismissal of the case, pursuant to Rule 37(b) and the Court's inherent authority.  Id. at 6-12.

Plaintiffs did not file any response to Defendant's motion.  Instead, on April 17, 2016, Plaintiffs filed a Motion to Extend Case Management Deadlines, or in the Alternative to Extend Case Management Discovery Deadline (Doc. No. 48; "Motion to Extend Deadlines"), seeking to extend discovery and other deadlines in part because, according to Plaintiffs, they "need[ed] the opportunity to depose [Defendant's] experts."  Motion to Extend Deadlines at 2.  Plaintiffs gave no indication in the motion that they were working to respond to

Defendant's discovery requests or to comply with the Court's Orders.  In opposition to the motion, Defendant argued, among other points, "Plaintiffs have still not complied with any of the Court's discovery orders and have not produced any documents in response to Defendant's outstanding discovery requests."   Defendant's Sur-Reply in Opposition to Plaintiffs' Motion to Extend Case Management Deadlines, or in the Alternative to Extend Case Management Discovery Deadline (Doc. No. 59), filed May 20, 2016, at 2.  As such, Defendant asserted, "Plaintiffs have not participated in good faith during discovery."  Id.[4]

On April 27, 2016, the Court entered an Order (Doc. No. 51), granting Defendant's Motion to Compel Responses to Second Request for Production and for Sanctions (Doc. No. 46), and directing Plaintiffs "to produce all relevant documents responsive to Defendant's Second Request for Production no later than May 9, 2016."  Order at 2 (emphasis omitted).  The undersigned found, in the Order, that sanctions were warranted for Plaintiffs' failure to respond to Defendant's discovery request, "[p]articularly in light of this Court's previous warnings to Plaintiffs that future discovery violations may result in sanctions."  Id. (citing Order (Doc. No. 43), entered February 19, 2016, at 3; Order (Doc. No. 47), entered March 25, 2016, at 3).  The Order stated that appropriate sanctions would be determined at a later date in conjunction with Defendant's Renewed Motion for Sanctions (Doc. No. 49) that was then still pending before the Court.  Order (Doc. No. 51) at 2.

On May 10, 2016, Defendant filed a notice stating that Plaintiffs had not produced any documents pursuant to the Court's April 27, 2016 Order.  See Defendant's Notice of Noncompliance with the Court's April 27, 2016 Order (Doc. No. 54).

---

[4]      The Motion to Extend Deadlines was later denied as moot on June 3, 2016, when the Court vacated the Second Amended Case Management and Scheduling Order (Doc. No. 40) and permitted Plaintiffs' counsel to withdraw, giving Plaintiffs an opportunity to seek new counsel.  See Order (Doc. No. 64).

## C. Subsequent Proceedings and Related Filings

### 1. First Hearing on Sanctions (and Other Matters)

On May 10, 2016, the undersigned entered an Order (Doc. No. 55) setting a hearing for June 1, 2016 on Defendant's Renewed Motion for Sanctions (Doc. No. 49) and the request for sanctions in Defendant's Motion to Compel Responses to Second Request for Production and for Sanctions (Doc. No. 46). On May 20, 2016, Plaintiffs' counsel, Ms. Valenzano, filed an Unopposed Motion to Withdraw as Plaintiffs' Counsel (Doc. No. 60; "Motion to Withdraw"). Ms. Valenzano stated she and Plaintiffs "had an ongoing fundamental disagreement and irreconcilable differences as to the procedures and actions that should be taken in the present action." Motion to Withdraw at 1. She noted that a Florida Bar Ethics Hotline Representative advised her to withdraw from representation. Id. at 1-2.

At the June 1, 2016 hearing, the undersigned heard from Mr. Alfaro, Ms. Valenzano, and Defendant's counsel regarding the matters then before the Court, including Defendant's Renewed Motion for Sanctions, the request for sanctions in the Motion to Compel Responses to Second Request for Production and for Sanctions, and Ms. Valenzano's Motion to Withdraw. See Minute Entry (Doc. No. 63); Transcript (Doc. No. 78; "6/1/16 Tr.").[5] First, the undersigned reviewed in detail the filings and Orders that led to the sanctions issues. 6/1/16 Tr. at 6-15. The undersigned found Plaintiffs failed to comply with three court Orders regarding discovery. Id. at 13, 15. Then Ms. Valenzano and Defendant's counsel stated that the Court's account of the facts was accurate, id. at 17, 21, and they argued the matter of sanctions, id. at 17-19, 21-24.

---

[5] As noted below, a portion of the hearing was held in camera and ex parte, for the Court to hear from Ms. Valenzano and Mr. Alfaro regarding the Motion to Withdraw. See Minute Entry (Doc. No. 63); Sealed Transcript (Doc. No. S-80).

On behalf of Plaintiffs, Ms. Valenzano addressed Plaintiffs' failure to comply with discovery requests and Orders, as well as their failure to respond to Defendant's motions at issue (Doc. Nos. 46, 49).  6/1/16 Tr. at 21-24, 58-59.  She stated she was "in constant or repeated communications with [Mr. Alfaro] in reference to providing documents and . . . unfortunately there [was] no response filed just because of the fact that most of what's in the motion[s] accurately reflects what's been going on with discovery."  Id. at 58.  As to sanctions, Ms. Valenzano argued Plaintiffs' failure to comply with discovery was not in bad faith.  Id. at 21-24.  According to Ms. Valenzano, Mr. Alfaro "refused" or was "unwilling" to provide all the documents because of "his living condition and his emotional condition, his physical and financial conditions and circumstances at this point."  Id. at 22.  Mr. Valenzano described Mr. Alfaro's financial circumstances, including that he is living out of his tractor-trailer, cannot afford regular meals, and must haul whatever loads he is paid to haul so he can earn enough money to survive.  Id. at 22-23.

Ms. Valenzano also pointed to Mr. Alfaro's distrustfulness.  She asked the Court to "understand that [Mr. Alfaro] has lack of trust with anyone that he comes across," and she suggested this is why Mr. Alfaro would not accept his duty to provide documents to Defendant, despite her efforts to explain this to him.  Id. at 23.  She stated she "believe[d] that it would be beneficial for him to hear it directly from the [C]ourt in reference to his duty and responsibilities to provide documents . . . ."  Id. at 22.

The undersigned expressed doubt that Mr. Alfaro's lack of time and financial resources can excuse his failure to comply with the Court's Orders.  Id. at 27.  Mr. Alfaro was advised that by filing and attempting to pursue this case against Defendant, Mr. Alfaro has

a responsibility to participate in good faith in discovery and to comply with the Court's Orders, including by taking the time to search for documents.  Id. at 27-28.

Mr. Alfaro was given the opportunity to explain his side at the hearing.  Id. at 31-43.[6] He disputed the relevance of documents sought by Defendant, id. at 31-32, 35, despite that the Court already had ruled that these documents were relevant and had ordered Plaintiffs to produce them.[7]   Mr. Alfaro also expressed his frustration with the underlying circumstances of the case, including how, in his view, Defendant intentionally damaged his trailer out of revenge.  Id. at 32-35.  Mr. Alfaro contended that he had produced essentially all requested documents and that other documents were lost or unavailable to him.  Id. at 37-40, 42, 43.

Defendant's counsel then addressed which documents Plaintiffs did and did not provide.   Id. at 43-58.   Based on Defendant's counsel's representations, which the undersigned credited, it was clear that Plaintiffs had failed to provide most of the documents they were ordered to produce.[8]

---

[6]      At hearings and in his pro se filings, Mr. Alfaro refers to Defendant as "Budweiser."

[7]      Specifically, Mr. Alfaro disputed the relevance of documents related to M.C. Brothers Trucking, another trucking company Mr. Alfaro established after the events at issue in this case.  Documents related to M.C. Brothers were sought in Defendant's Motion to Compel Responses to Second Request for Production and for Sanctions (Doc. No. 46), that was granted on April 27, 2016, see Order (Doc. No. 51).

[8]      Defendant's counsel went through a list of documents sought in Defendant's First Request for Production, which Plaintiffs were directed to produce in the February 19, 2016 Order (Doc. No. 43) and again in the March 25, 2016 Order (Doc. No. 47).  Among these documents, Plaintiffs produced the following: unsigned tax returns 2006 to 2010, 6/1/16 Tr. at 43-44; "a finance statement regarding the trailer," id. at 44; Mr. Alfaro's insurance card, with policy number redacted, id. at 48; a copy of Mr. Alfaro's current commercial driver's license, id. at 49; and "only a few months" of log books, id. at 50.
The following documents sought in Defendant's First Request for Production were not provided: Plaintiffs' executed tax returns for 2006 to present, id. at 46; Plaintiffs' balance sheets, cash flow statements, and financial statements from 2006 to present, id. at 47; F & M Trucking's bank account statements, id.; correspondence between Mr. Alfaro and/or F & M Trucking and C.H. Robinson, id. at 47-48; load confirmations, id. at 48; correspondence Plaintiffs received from C.H. Robinson to a computer in their truck, id. at 48; insurance policies, id.; documents relating to Plaintiffs' trip from Colonial Heights, Virginia to Jacksonville, Florida, id.; title documents relating to the trailer, id. at 48-49; records relating to maintenance and repairs performed on the trailer, id. at 49; documents relating to Plaintiffs' authorization to operate a tractor trailer (including licenses and

At the hearing, the undersigned ruled on the sanctions matters in part but withheld deciding what particular sanctions were appropriate.  See id. at 59-61, 64-65.  With respect to Defendant's Motion to Compel Responses to Second Request for Production and for Sanctions (Doc. No. 46), the undersigned found it appropriate under Rule 37 to require Plaintiffs to pay Defendant's reasonable expenses incurred in making the motion, including attorneys' fees.[9]  6/1/16 Tr. at 59.  The Renewed Motion for Sanctions was also granted on the record.  Id. at 60-61.  The undersigned found that, having warned Plaintiffs multiple times that sanctions would be imposed for further failures to comply with the Court's Orders, it was appropriate to impose sanctions.  Id.  Also taken into consideration were Plaintiffs' failures to respond to the Renewed Motion for Sanctions and the Motion to Compel Responses to Second Request for Production and for Sanctions, as well as the totality of Plaintiffs' conduct or lack thereof in the participation of discovery.  Id.

---

permits, aside from Mr. Alfaro's current commercial driver's license), id.; DOT certificates, id. at 50; Plaintiffs' log books from January 2010 to present, aside from the few that were provided, id.; documents relating to citations, warnings, or fines, id. at 50-51; DOT inspection reports, id. at 51; Plaintiffs' operating authority permit and vehicle examination records, id.; and FMCSA (Federal Motor Carrier Safety Administration) compliance reviews, id.

No documents were provided in response to Defendant's Second Request for Production, which the Court directed Plaintiffs to produce on April 27, 2016 (Order, Doc. No. 51).  This included the following: M.C. Brothers tax returns, financial statements, bank account statements, 6/1/16 Tr. at 53; income and revenue documents of F & M Trucking and M.C. Brothers, id. at 54; documents evidencing the transfer of funds between F & M Trucking and M.C. Brothers, id.; payroll records, id.; agreements and correspondence between M.C. Brothers and brokers, id. at 54-55; load confirmations and bills of lading, id. at 55; records of payment to M.C. Brothers, id.; records of payment to F & M Trucking from brokers other than C.H. Robinson, id.; records relating to employment offers made to Mr. Alfaro, F & M Trucking, or M.C. Brothers, id.; insurance documents, id.; documents related to purchase of the trailer, id. at 55-56; documents related to trailer repair or previous damage, id. at 56; accident or incident reports related to any vehicle owned by Mr. Alfaro, F & M Trucking, or M.C. Brothers, id.; documents related to an earlier workers' compensation claim, id.; previous litigation documents, id. at 56-57; licenses, permits, or certificates relating to M.C. Brothers' authority to transport, id. at 57; license suspension or revocations documents, id.; medical exam records relating to Mr. Alfaro's physical ability to operate tractor trailer, id.; and FMCSA reviews, id.

[9]     Defendant was directed at the hearing to file a document setting out the amount of attorneys' fees expended in filing and litigating the Motion to Compel Responses to Second Request for Production and for Sanctions (Doc. No. 46), so that Plaintiffs could be given an opportunity to respond and a decision could be made as to the appropriate amount of fees to award under Rule 37(a)(5)(A).  See 6/1/16 Tr. at 59.

The Court then took up Ms. Valenzano's Motion to Withdraw.  See id. at 61-65. During an in camera, ex parte portion of the hearing, the undersigned heard from Ms. Valenzano and Mr. Alfaro regarding their conflicts.  See Minute Entry (Doc. No. 63); Sealed Transcript (Doc. No. S-80).

Following the hearing, on June 3, 2016, the undersigned entered an Order (Doc. No. 64), granting the Renewed Motion for Sanctions for the reasons stated on the record at the hearing, but leaving appropriate sanctions to "be determined at a later date."  Order at 1. Also in the Order, Ms. Valenzano was granted leave to withdraw, and the case was administratively closed to give Plaintiffs an opportunity to seek new counsel.  See Order (Doc. No. 64).[10]  As to sanctions, the Order stated that upon reopening of the case after August 1, 2016, a hearing would be set "to determine appropriate sanctions to impose regarding Defendant's Renewed Motion for Sanctions (Doc. No. 49) and Defendant's Motion to Compel Responses to Second Request for Production and for Sanctions (Doc. No. 46)." Order (Doc. No. 64) at 3.

### 2.  Motion for Appointment of Counsel

On July 5, 2016, Mr. Alfaro filed a Motion for Appointment of Counsel (Doc. No. 65), requesting that the Court appoint him counsel due to his financial inability to afford legal fees. On July 13, 2016, the undersigned entered an Order (Doc. No. 67), denying the motion.  The Order noted that this is a fairly straightforward case in which the period for discovery is mostly completed, and that Mr. Alfaro was represented by counsel for at least nine months of discovery before his counsel moved to withdraw.  Order at 3.  It was further noted "that Mr.

---

[10]    In the Order, the undersigned noted that Plaintiff F & M Trucking, as a corporation, could appear in this action only through counsel admitted to practice in this Court.  See id. at 2.  The undersigned directed F & M Trucking to retain counsel and have counsel file a notice of appearance no later than August 1, 2016, failing which could result in dismissal of F & M Trucking's claims.  Order (Doc. No. 64) at 2.

Alfaro's discordance with counsel has been a recurring feature of this action." <u>Id.</u> As stated in the Order, "In the time since the case was removed to this Court in August 2014, Mr. Alfaro has been represented by two different attorneys, successively, who both withdrew from representation due to fundamental disagreements between Mr. Alfaro and his counsel about what actions should be taken in the case."[11] <u>Id.</u> (citing the respective motions to withdraw (Doc. Nos. 19, 60)).

On July 27, 2016, Mr. Alfaro filed a notice stating that he is proceeding in this action <u>pro</u> <u>se</u>. <u>See</u> Notice of Appearance (Doc. No. 68). F & M Trucking remains unrepresented by counsel.

### 3.  Order Setting Second Hearing on Sanctions

On August 10, 2016, the undersigned entered an Order (Doc. No. 69), directing the Clerk of Court to reopen the case and setting a hearing for September 14, 2016 to "address the status of the case as well as the matter of appropriate sanctions based on Defendant's requests for sanctions against Plaintiffs." Order (Doc. No. 69) at 2. Regarding the issue of whether sanctions are appropriate against Ms. Valenzano and/or Mr. Alfaro, the Order stated, "Ms. Valenzano may rest on her prior representations to the Court if she elects not to attend the hearing, or she may file a memorandum addressing the sanctions issues." <u>Id.</u> On September 8, 2016, Ms. Valenzano filed a notice (Doc. No. 73), stating that she would not appear at the hearing and that she would instead "rest[] on her prior representations to

---

[11]     As the Order went on to note, Mr. Alfaro's last attorney, Ms. Valenzano, outlined at a hearing and in pleadings some of the difficulties she experienced in dealing with Mr. Alfaro. Order (Doc. No. 67) at 3-4. These difficulties included Mr. Alfaro's persistent failure to provide required documents in discovery, despite this Court's Orders and Ms. Valenzano's repeated reminders. <u>See</u> Plaintiffs Federico Alfaro and F & M Trucking Carrier Services, Inc.'s Response to Defendant's Motion for Sanctions (Doc. No. 45), filed March 22, 2016, at 2. The Order also noted that a fuller account of Ms. Valenzano's difficulties dealing with Mr. Alfaro was presented to the Court during the <u>in camera ex parte</u> portion of the June 1, 2016 hearing. Order (Doc. No. 67) at 4 n.2; <u>see</u> Minute Entry (Doc. No. 63); Sealed Transcript (Doc. No. S-80).

the Court and [would] not be filing a memorandum addressing the sanctions issue." Doc. No. 73, at 1.

### 4.  September 2016 Filings from Mr. Alfaro

On September 13, 2016, the Court received a variety of documents from Mr. Alfaro; these are construed as two motions with supporting documentation, although the precise relief sought by these motions is unclear.  See Doc. Nos. 74, 75.[12]  One of the documents that is construed as a motion (Doc. No. 75) appears to be a list of discovery Mr. Alfaro wishes to obtain by subpoena.  The other document that is construed as a motion (Doc. No. 74) is a letter to the Court, dated September 12, 2016, in which Mr. Alfaro explains his perspective on the matters before the Court, asks the Court for "some time to build [his] case," and further asks that the Court to "please not close [his] case." Doc. No. 74, at 2-3.[13] Among other claims in the letter, he asserts the following about Ms. Valenzano:

> [Ms. Valenzano] refused to build my case, she held my case for a long period of time without doing anything, to the point that she was helping build a case against me, I became suspicious and tricked her with a little lie to convi[n]ce myself. I told her that I couldn't get my medical card because of high blood pressure issues, I also informed her that I got my medical card renewed by paying someone at the clinic that I go to, that was the lie that I told her then I became aware that Ms. Valenzano informed Murphy Law Firm [(the firm that represents Defendant)[14]] what I had informed her which was not true, the reason I know this is because right away the Murphy Law Firm requested all my medical records from the clinic that I do my medical card, which they never knew anything about that until I informed Ms. Valenzano about it, that's how I knew she was on the other part[y's] side, that's why I could not true [sic] her no more, I was paying her for her to build a case for me not against me, there's been so many issues that have been going on with Ms. Valenzano and myself, but we would be here all day if I wrote it on paper.

---

[12]     These "motions," such as they are, remain pending before the Court.

[13]     Citations to this document—and any other document with unnumbered pages—refer to the page numbers assigned by the Court's Electronic Case Filing System.

[14]     Presumably, Mr. Alfaro is referring to Murphy & Anderson, P.A., the firm that represents Defendant in this case.

Id. at 2. Mr. Alfaro asserts that he gave Ms. Valenzano the documents requested by Defendant in discovery, and then she refused to return all of them, even after he "filed a police report against her." Id. Mr. Alfaro claims that Ms. Valenzano and Defendant's law firm were "hiding" his documents from him. Id.

Indeed, Mr. Alfaro believes both his prior attorneys, Ms. Valenzano and Mr. Davis, have conspired against him with Defendant and Defendant's counsel, including by threatening to "close" his case. Id. Mr. Alfaro explains in the letter, "All my problems with my case ha[ve] been caused by Mr. Davis who promise[d] CH Robinson and [Defendant] to close my case, from that date they called him to settle outside the court." Id. He asserts he found out that Mr. Davis "is a very close friend with the Murphy Law Firm and [that Mr. Davis] was the one that recommend[ed] the Murphy Law Firm to CH Robinson and [Defendant]." Id. In Mr. Alfaro's view, Mr. Davis and Defendant's counsel decided together "to close the case in the state court and reopen a new case at the federal court, and all to build a[n] unfair case against [Mr. Alfaro] and [his] company." Id.

Mr. Alfaro's September 12, 2016 letter concludes by pleading for relief as follows:

So I request the Judge to please understand what is going on in this case with all the issues against me, I never ha[d] a chance to demand discovery and subpoenas to build my case because Mr. Davis is making sure that I don't receive that proper legal help I need. I'm going to submit documents to the court discovery and prove, with the reports and pictures and a cd that Ms. Valenzano would not return all documents to me until I filed a police report against her, even though[] she still holding some of my paperwork and only returned a cd to me after she made me sign a document stating that all paperwork was given to me. The truth of the matter is that the Murphy Law Firm filed a motion in court asking for the discovery documents that Ms. Valenzano[] and the Murphy Law Firm [are] hiding from me, they know I don't have it because they have the original documents are in hands [sic]. So I ask you your Honor I need some time to build my case and submit it to the courts for you to decide how to conduct justice. Your honor I ask that you please not close my case, it's been 5 years that I have been living a difficult[] life I feel that my life is in danger, this case should have been taken care of a long time ago

16

and instead of keep me holding on [sic] for that period of time for the damages that they have caused me, that's why I ask you for justice[] and honest[]y in this case.

Id. Included with the letter are various documents, filed apparently to support Mr. Alfaro's case, along with some handwritten annotations by Mr. Alfaro about the documents. See Doc. Nos. 74-1 to 74-6.[15] None of these documents are those which Plaintiffs previously failed to provide pursuant to the Court's Orders.

### 5. Second Hearing on Sanctions

A hearing was held on September 14, 2016. See Minute Entry (Doc. No. 76); Transcript (Doc. No. 81; "9/14/16 Tr."). Mr. Alfaro and Defendant's counsel addressed the issue of appropriate sanctions against Plaintiffs. Mr. Alfaro spoke at length about various matters, including the claims he made in his September 12, 2016 letter (Doc. No. 74). See 9/14/16 Tr. at 15-80, 95-117. He also stated, as to the alleged conduct of Defendant and Defendant's counsel, that he is "here for revenge" for "what they did to [him]." 9/14/16 Tr. at 75. He asserted that he is seeking ten million dollars from Defendant "because [of] all the malpractice [that has] been going on after [his] claim." Id. at 105.

---

[15] Some of these documents appear to be evidence related to the case, including photographs, invoices, correspondence, website information about forklift training and certification, and a variety of other documents. See, e.g., Doc. No. 74-1, at 2-4; Doc. No. 74-6. Some of the documents are merely documents previously filed in this case, including: a page from the state court docket, Doc. No. 74-2, at 2; Plaintiff's Complaint and the exhibits attached thereto, Doc. No. 74-3; and Defendant's Notice of Removal, Doc. No. 74-4, at 1-5.

Also included is a Miami-Dade County police report from May 27, 2016, stating that Mr. Alfaro called requesting a police escort to Ms. Valenzano's law office to pick up $6,000, and that the officer advised Mr. Alfaro that the officer could not be present or responsible for a money transaction. Doc. No. 74-5, at 1-2. Along with the report is a page containing a photocopy of a CD and an envelope from Defendant's counsel to Ms. Valenzano. Id. at 5. Based on the label, the CD appears to be from Defendant's counsel and to contain discovery produced by Defendant and non-party C.H. Robinson. In a handwritten note, Mr. Alfaro remarks that the police report misstates the facts. Id. at 3. According to Mr. Alfaro, he was supposed to pick up $6,100 from Ms. Valenzano because "that's what the attorney owes [him]." Id. Furthermore, he asserts that he "was also asking for the rest of the documents and evidence from the discovery." Id. Mr. Alfaro explains, "The same day the officer showed up the attorney gave me a CD that belongs to the discovery, and she told me she doesn't have any more documents for me." Id. He goes on to assert, "The CD and the papers that she is holding it wasn't on the package that she returned and she made me sign a document of incomplete package." Id.

Mr. Alfaro gave a detailed account of his perception of the events surrounding the forklift incident underlying his claims in the case. See id. at 16-31, 72-74. In doing so, he described two allegedly related incidents in which his trailer was damaged by a forklift—first, upon picking up a load of beer at a facility in Virginia; and second, upon attempting to unload at a facility in Jacksonville, Florida. See id. Only the second incident, in Jacksonville, is alleged in the Complaint. According to Mr. Alfaro, a forklift driver in Virginia damaged his trailer intentionally because the driver was connected to a company competing with Plaintiff to transport the load. Id. at 17-20. It appears Mr. Alfaro's only basis for this claim was that the employee had a bad attitude. See id. at 18-20. Mr. Alfaro believed the Virginia forklift driver was employed by Defendant, see id. at 19, 28-29, and that the subsequent damage in Jacksonville was done intentionally to cover up the damage caused in Virginia, see id. at 21-27, 71-74. After he sought compensation for the damage, according to Mr. Alfaro, Defendant threatened C.H. Robinson to cancel Mr. Alfaro's contract and ensure that no one else hires him, see id. at 28-31.

At the hearing, Mr. Alfaro also recounted how, in his view, Mr. Davis and Ms. Valenzano have conspired with Defendant to harm his case. See id. at 32-45, 48-53, 56-71, 95-109. Mr. Alfaro elaborated on his claims in the September 12, 2016 letter that Mr. Davis was friends with Defendant's counsel's firm and recommended the firm to Defendant. Id. at 34-36, 39-41. Mr. Alfaro further asserted, apparently in reference to the case's removal to federal court, that when the case was in state court, Mr. Davis worked with Defendant's counsel to settle and "close" the case.[16] Id. at 33-34, 36-38, 108-09. Mr. Alfaro stated that

---

[16]     On January 21, 2015, after the case was removed to this Court, a settlement conference was conducted before the undersigned, with Mr. Davis representing Plaintiffs. See Minute Entry (Doc. No. 16). But at the hearing, Mr. Alfaro may also have been referring to settlement discussions that took place before removal.

he based these conclusions about Mr. Davis on "common sense" and the fact that Mr. Davis called Mr. Alfaro every time Mr. Davis "did something" in the case.  Id. at 36.  In addition, Mr. Alfaro contended that ever since Mr. Davis withdrew from the case, Mr. Davis has tried to prevent any other attorney from representing Mr. Alfaro.  See id. at 107-08.  Mr. Alfaro claimed an attorney told him that Mr. Davis put a notice "into the computer," directing attorneys to contact Mr. Davis before taking Mr. Alfaro's case.  Id.  He stated that Mr. Davis frequently called Ms. Valenzano while she was representing Mr. Alfaro.  Id. at 33, 48-49.

Mr. Alfaro claimed Ms. Valenzano only worked to obtain documents for Defendant and never obtained any discovery for Mr. Alfaro.  Id. at 57-58, 59, 67.  Despite this claim, Mr. Alfaro acknowledged, when pressed, that he had not even examined a CD he received from Ms. Valenzano that apparently contains a great deal of discovery from Defendant.  See id. at 68, 99-100.  Mr. Alfaro further alleged that among the ways Ms. Valenzano was working against him, she and her father (an old friend of Mr. Alfaro) conspired to gather personal information from Mr. Alfaro and relay it to Defendant.  See id. at 15, 50-52.  Mr. Alfaro based this allegation on his observation that, when he disclosed personal information to Ms. Valenzano's father alone, Ms. Valenzano would then convey to Mr. Alfaro a discovery request related to that information.  Id. at 50-52.

Mr. Alfaro stated that when he realized Ms. Valenzano was doing this, he played the "trick" on her that he referred to in his September 12, 2016 letter, telling Ms. Valenzano that he bribed someone at the medical clinic to obtain his medical card; soon after, according to Mr. Alfaro, Ms. Valenzano told him Defendant was requesting the records from that clinic.  Id. at 58-59.  Mr. Alfaro stated that he no longer trusted Ms. Valenzano after that.  Id. at 60.

19

In addition, he asserted that he witnessed Ms. Valenzano on a phone call with Defendant in which Defendant offered Ms. Valenzano ten thousand dollars as a "bribe."  Id. at 63-64.

As to his own discovery obligations, Mr. Alfaro contended that he gave Ms. Valenzano the documents that were requested.  Id. at 65-66.  He insisted she lied to the Court, id. at 79, and he asserted, "I can make Ms. Valenzano tell the truth," id. at 114.  When asked what he meant, he replied, "That means that I know things about these people, okay, and I'm going to take her to the Bar Association and I'm going to—if she don't tell the truth, I'll make her lose her license. Yes. Because what they done is not right."  Id.

Over the course of the hearing, Mr. Alfaro made a variety of other claims about people conspiring against him or otherwise tricking him.  Mr. Alfaro claimed that Defendant and C.H. Robinson hired people to follow him, and specifically that a man from C.H. Robinson approached him in the post office to talk about this case.  See id. at 41, 110-12.  Mr. Alfaro also referred vaguely to a case in which, in Mr. Alfaro's view, Wachovia (presumably the banking company) obtained a judgment against him by convincing the judge that Wachovia subpoenaed him, even though they had not done so.  See id. at 41.  He mentioned another case, related to a truck accident; Mr. Alfaro believed the attorney in the case "sacrificed" him to win the case, costing Mr. Alfaro his license.  Id. at 54.

Defendant's counsel, Niels Murphy, speaking on behalf of his law firm and Defendant, disputed Mr. Alfaro's numerous claims and accusations, and he argued for dismissal of the case as a sanction for Plaintiffs' discovery violations and conduct overall.  See id. at 80-94. Mr. Murphy stated to the Court "that there has been no conspiracy, no collaboration with [Mr. Alfaro's] counsel to undermine him."  Id. at 94.  Mr. Murphy also explained, among other things, that he never met Mr. Davis prior to this case and that his firm's representation of

20

Defendant was unrelated to this case or to Mr. Davis.  Id. at 83, 84-85.  Mr. Murphy acknowledged that he offered ten thousand dollars to Ms. Valenzano, not as a bribe but as a settlement of the case.  Id. at 87.  Mr. Murphy also contended that Plaintiffs' counsel did serve discovery requests on Defendant and that Defendant produced documents; some of these documents, according to Mr. Murphy, were then produced back to Defendant by Plaintiffs.  Id. at 83, 87, 88.  Additionally, Mr. Murphy stated that Mr. Alfaro called his law firm and threatened to complain to the "Bar Association" about all of the lawyers who have been involved with his case.  Id. at 89-90.

Near the conclusion of the hearing, Mr. Alfaro was advised that the undersigned would review the arguments and other relevant matters and determine whether dismissal is appropriate.  See id. at 116.

### 6.  January 2017 Letter from Mr. Alfaro

On January 9, 2017, the Court received a letter from Mr. Alfaro (dated January 5, 2017).  Doc. No. 77.  The letter basically pleads for the Court and/or Defendant to resolve (or "settle") Mr. Alfaro's case in his favor.  Id. at 2.  Mr. Alfaro asserts in the letter that Defendant and C.H. Robinson have "made to[o] many mistakes thinking manipulating the law is the way to get away with the crime that [Defendant's] employees did not once but twice in less than 24 hours, by manipulating [Mr. Alfaro's] own attorneys and some other people from court that [Mr. Alfaro would] rather not mention at this time."  Id.  He asserts that he is "going to triple [his] settlement" due to "manipulation of police forces, manipulation of [Mr. Alfaro's] attorneys for building a faults [sic] case against [him]."  Id.  He states, moreover, that to him "this case buil[t] by Murphy [&] Anderson is the biggest joke in the history of the law."  Id.

21

### III.  Applicable Law

A court's authority to impose sanctions, including case dismissal, for a party's noncompliance with discovery orders derives from Rule 37(b)(2)(A), Rule 41(b), and the court's inherent powers.  First, Rule 37(b)(2)(A) states that if a party "fails to obey an order to provide or permit discovery. . . the court . . . may issue further just orders" that "may include the following":

(I) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
(iii) striking pleadings in whole or in part;
(iv) staying further proceedings until the order is obeyed;
**(v) dismissing the action or proceeding in whole or in part**;
(vi) rendering a default judgment against the disobedient party; or
(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A) (emphasis added).  "Sanctions allowed under Rule 37 are intended to 1) compensate the court and other parties for the added expense caused by discovery abuses, 2) compel discovery, 3) deter others from engaging in similar conduct, and 4) penalize the offending party or attorney."  Wouters v. Martin Cty., Fla., 9 F.3d 924, 933 (11th Cir. 1993) (citations omitted).

Rule 41(b) specifically provides that "a defendant may move to dismiss the action or any claims against it" on the basis of a plaintiff's "fail[ure] to prosecute or to comply with the[ R]ules or a court order."  Fed. R. Civ. P. 41(b).  The Rule adds, "Unless the dismissal order states otherwise, a dismissal under [Rule 41(b)] and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits."  Id.

22

"While dismissal is an extraordinary remedy, dismissal upon disregard of an order, especially where the litigant has been forewarned, generally is not an abuse of discretion." Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989) (citations omitted). "[A] dismissal with prejudice, whether on motion or sua sponte, is an extreme sanction that may be properly imposed only when: '(1) a party engages in a clear pattern of delay or willful contempt (contumacious conduct); and (2) the district court specifically finds that lesser sanctions would not suffice.'" Betty K Agencies, Ltd. v. M/V MONADA, 432 F.3d 1333, 1337-38 (11th Cir. 2005) (quoting World Thrust Films, Inc. v. Int'l Family Entm't, Inc., 41 F.3d 1454, 1456 (11th Cir. 1995)). "Violation of a discovery order caused by simple negligence, misunderstanding, or inability to comply will not justify a Rule 37 default judgment or dismissal." Malautea v. Suzuki Motor Co., 987 F.2d 1536, 1542 (11th Cir. 1993) (citing In re Chase and Sanborn Corp., 872 F.2d 397, 400 (11th Cir. 1989); Equal Emp't Opportunity Comm'n v. Troy State Univ., 693 F.2d 1353, 1357 (11th Cir. 1982)). "Moreover, the harsh sanction of dismissal with prejudice is thought to be more appropriate in a case where a party, as distinct from counsel, is culpable." Betty K Agencies, Ltd., 432 F.3d at 1338 (citation omitted).

Dismissal (or default judgment) may be appropriate as a sanction when a party, without good cause, violates multiple discovery orders and receives ample warning of the possibility of sanctions such as dismissal. In Malautea, for example, the United States Court of Appeals for the Eleventh Circuit determined that "the defendants richly deserved the sanction of a default judgment" for their failure to comply with the district court's discovery

23

orders.  987 F.2d at 1542.[17]  The defendants in <u>Malautea</u> were ordered multiple times to provide certain discoverable information, and even after they were threatened twice with the sanction of default judgment, they still failed to provide the information.  <u>See</u> <u>id.</u> at 1542-43. Though the defendants contended their noncompliance was not willful, the Eleventh Circuit observed that the defendants had "ample notice of the possibility of a default judgment sanction and liberal opportunity to show why the sanction was not deserved."  <u>Id.</u> at 1543. The Court also agreed with the district court's finding that "sanctions less harsh than a default judgment would not have changed the defendants' behavior."  <u>Id.</u> at 1544.

Similarly, in <u>Shortz v. City of Tuskegee, Ala.</u>, the Eleventh Circuit upheld a district court's order of dismissal, stating, "Because [the plaintiff] failed to enunciate any compelling reason for failing to comply with the court's repeated orders to respond to the defendants' discovery requests, the district court correctly found that [the plaintiff's] failure to comply was a result of willfulness or bad faith."  352 F. App'x 355, 359-60 (11th Cir. 2009) (citing <u>Malautea</u>, 987 F.2d at 1542).  Among the reasons the plaintiff gave for noncompliance was that he lacked money and time to comply.  <u>See</u> <u>id.</u> at 357, 358, 359.  According to the Court, the district court's finding was "further supported by [the plaintiff's] antagonistic relationship with defense counsel and his demeanor before both the magistrate and the district court." <u>Id.</u> at 360.  The Court also agreed that in light of the willful noncompliance, lesser sanctions would not suffice.  <u>See</u> <u>id.</u> at 360.

In <u>Commodity Futures Trading Commission v. Alpha Trade Group, S.A.</u>, a court in this district determined that a sanction of default judgment in the plaintiff's favor was warranted

---

[17]     The attorneys representing the defendants in <u>Malautea</u> were also found to be at fault and were ordered by the district court to pay the plaintiff's attorneys' fees and costs and also to pay an additional fine.  <u>See</u> 987 F.2d at 1541-42, 1544-46.

for the defendants' conduct in the case that "demonstrated a pattern of non-cooperation that . . . resulted in numerous delays and difficulties for the parties and the Court." No. 6:11-cv-1584-Orl-31DAB, 2012 WL 3984717, at *3 (M.D. Fla. Aug. 24, 2012) (unpublished Report and Recommendation), adopted, 2012 WL 3984872 (M.D. Fla. Sept. 11, 2012) (unpublished Order). The conduct included the defendants' failure to produce initial disclosures, to respond to discovery requests and motions to compel, and to comply with two Court Orders compelling discovery. See id. According to the Court, "Such conduct in the face of repeated warnings that sanctions (including default) could result supports a conclusion that the failure of the[] [d]efendants to comply with discovery and the Orders of this Court was willful." Id. (citing Shortz, 352 F. App'x at 359). The Court further noted that lesser sanctions would not suffice, in light of the history of the defendants' conduct in the case: "Faced with the evidence of 'flagrant disregard' of this Court's prior Orders, the Court has every reason to expect that an order of lesser sanctions would be similarly ignored." Id.

A party's pro se status or indigency does not excuse wilful noncompliance or preclude dismissal as a sanction. See, e.g., Watts v. Ford Motor Co., 648 F. App'x 970, 973 (11th Cir. 2016) (unpublished) (citing Moon, 863 F.2d at 837); Ran v. Cook, No. 1:07-cv-00249-MP-WCS, 2010 WL 3489923, at *2 (N.D. Fla. Aug. 30, 2010) (unpublished) (in concluding that dismissal was warranted, finding that the plaintiff's "pro se status and language difficulties" were not "the cause of her failures to comply with court orders, but rather her willful bad faith"; also noting monetary sanctions would not suffice because she lacked the funds to reimburse the defendants for the needless expense she caused them); Martin v. Waffle House, Inc., No. 5:08-cv-141(HL), 2009 WL 1065353, at *2 (M.D. Ga. Apr. 20, 2009) (unpublished) (reasoning that the plaintiff's conduct, including failure to produce

25

documents despite extensions and the court's admonishments, showed he "ha[d] no intention of fully complying with his discovery obligations"; further noting the plaintiff was not excused by his indigency or pro se status).

## IV.  Discussion

The undersigned has already determined that sanctions are to be imposed here based on Plaintiffs' violation of the Orders and the totality of Plaintiffs' conduct in discovery.  The question is what sanctions are appropriate.  Defendant seeks dismissal with prejudice.  To determine whether this extreme sanction is warranted, the undersigned considers whether Plaintiffs' conduct demonstrates a clear pattern of delay or willful contempt and whether lesser sanctions would suffice.  See Betty K Agencies, Ltd., 432 F.3d at 1337-38.

As set out above, the record demonstrates a clear pattern of delay and willful refusal to cooperate in discovery, respond to motions, and comply with the Court's Orders.  Indeed, while represented by counsel, Plaintiffs violated three Orders (Doc. Nos. 43, 47, 51) by failing to produce documents the undersigned directed them to produce.  Plaintiffs were given multiple chances to provide documents.  In the Orders entered on February 19, 2016 (Doc. No. 43) and March 25, 2016 (Doc. No. 47), Plaintiffs were warned that sanctions could or would be imposed for future violations, and yet Plaintiffs still failed to produce a large number of documents that were within their possession or were otherwise accessible to them.  And their excuses for doing so—such as a lack of funds or time to obtain documents—are not compelling or credible.  See Shortz, 352 F. App'x at 357, 358, 359-60.  For instance, Plaintiffs refused to search their warehouse for documents, and they asserted it was too costly to obtain other documents, such as their tax returns, bank account statements, and trailer title documents.  See, e.g., 6/1/16 Tr. at 22 (Ms. Valenzano stating that Mr. Alfaro "refused" or

26

was "unwilling" to provide all the documents because of "his living condition and his emotional condition, his physical and financial conditions and circumstances at this point"); Doc. No. 44-3 (Plaintiffs' (<u>Second</u> <u>Amended</u>) Response to Defendant's Request for Production to Plaintiffs), at 8-10, 16, 18, 22, 25, 26, 27.

With no compelling excuse for their noncompliance in discovery, Plaintiffs neglected to file any response to two motions that explicitly sought sanctions for Plaintiffs' failure to provide documents: Defendant's Motion to Compel Responses to Second Request for Production and for Sanctions (Doc. No. 46), filed March 25, 2016; and Defendant's Renewed Motion for Sanctions (Doc. No. 49), filed April 19, 2016.  Plaintiffs' counsel at the time, Ms. Valenzano, explained at the June 1, 2016 hearing that no responses were filed because the motions "accurately reflect[ed] what's been going on with discovery."  6/1/16 Tr. at 58-59. Ms. Valenzano made repeated attempts to remind Plaintiffs of their duty to produce documents as directed, and Plaintiffs persistently failed to cooperate.  <u>See id.</u> at 58; Response to Motion for Sanctions (Doc. No. 45) at 2; <u>see also</u> Doc. No. 44-2 (March 1, 2016 email from Ms. Valenzano to Defendant's counsel); Doc. No. 46-2 (March 10, 2016 email from Ms. Valenzano to Defendant's counsel).

Notably, despite being warned of sanctions and given numerous opportunities to comply with his discovery obligations and the Court's Orders, Mr. Alfaro has offered no credible assurances that he is working to fulfill his obligations or will do so in the future.  Even in the time since the motions for sanctions were granted, with dismissal under consideration, Mr. Alfaro still has given no sign of his willingness to cooperate.  In Mr. Alfaro's September 12, 2016 letter, for example, Mr. Alfaro asks the Court for "some time to build [his] case," but he does not provide any documents he previously failed to provide in discovery, nor does he

27

mention any efforts to provide such documents.  Doc. No. 74, at 2-3.  The same goes for the letter dated January 5, 2017, in which Mr. Alfaro urges the Court to "settle" his case.  Doc. No. 77, at 2.  Rather than acknowledging his own responsibilities in the case, Mr. Alfaro seems to view these sanctions proceedings as unfairly putting him on trial.  At the June 1, 2016 hearing on sanctions, Mr. Alfaro asked, rhetorically, "Who is the defender here?" 6/1/16 Tr. at 36.  Later, at the September 14, 2016 hearing, he asserted, apparently in reference to Defendant and its counsel, "[T]hese people are suing me."  9/14/16 Tr. at 113.

In light of these facts, it is clear that sanctions less than dismissal would not suffice here.  For instance, even if Mr. Alfaro were able to pay a monetary sanction—despite claiming he has no money—his conduct overall gives no reason to believe this would prompt him to comply with the Court's Orders or otherwise change his approach to these proceedings.  And given the copious discovery Plaintiffs failed to produce, see supra note 8, no other sanctions would effectively penalize Plaintiffs or compensate Defendant or the Court for the conduct at issue.  Above all, Mr. Alfaro does not appear amenable to proceeding with this action in an appropriate manner.

Mr. Alfaro's noncompliance in discovery appears to be motivated largely by his mistrust, which stretches to all aspects of the case.  Mr. Alfaro even believes Defendant and C.H. Robinson hired people to follow him, see 9/14/16 Tr. at 41, 110-12, and that Defendant manipulated the police against him, Doc. No. 77, at 2.  He believes both his prior attorneys were conspiring with Defendant to harm his case.  As Ms. Valenzano represented to the Court at the hearing, Mr. Alfaro "has lack of trust with anyone that he comes across," and apparently as a result, he disclaimed any duty to provide documents that the Court ordered. 6/1/16 Tr. at 23.  Prompted by his distrust, not only was Mr. Alfaro uncooperative with his

28

counsel, but he even claims to have lied to his counsel, feeding her false information to test her loyalty.  See Doc. No. 74, at 2; 9/14/16 Tr. at 58-59.

Accordingly, the undersigned finds Plaintiffs' conduct demonstrates willful contempt, and sanctions less than dismissal with prejudice will not suffice here.  Though he pleads for the Court to understand his misfortune, Mr. Alfaro has refused to abide by the rules of discovery, to obey Court Orders, and to comport himself and cooperate in the manner required in these proceedings.  And despite Mr. Alfaro's attempts to shift the blame to Plaintiffs' counsel and others, the record establishes that Plaintiffs themselves, not their counsel, are responsible for the sanctionable conduct here.[18]  Considering the circumstances overall, the undersigned finds dismissal of the case with prejudice is warranted as a sanction.[19]  See Shortz, 352 F. App'x at 359-60; Malautea, 987 F.2d at 1542-44.

This conclusion is bolstered by Mr. Alfaro's statements demonstrating his bad-faith motives in prosecuting his case.  Mr. Alfaro seems propelled by a personal animus against Defendant and Defendant's counsel for the wide-ranging conspiratorial conduct Mr. Alfaro perceives.  As noted, for instance, Mr. Alfaro asserted that he is "here for revenge" for "what they did to [him]," 9/14/16 Tr. at 75, and that he is seeking ten million dollars from Defendant due to what he sees as "all the malpractice" in the case, id. at 105.  In his January 5, 2017 letter, Mr. Alfaro threatened to "triple" the amount he seeks in recovery because of Defendant's "manipulation" of the law, his attorneys, the police, and "some other people from the court."  Doc. No. 77, at 2.  By all indications, his claims of malpractice and manipulation

---

[18]    As such, sanctions are not warranted against Ms. Valenzano.

[19]    Although Defendant also seeks attorneys' fees (among other sanctions), the representations of Ms. Valenzano and Mr. Alfaro make it apparent that Plaintiffs cannot afford monetary sanctions.  Accordingly, the undersigned declines to recommend an award of attorneys' fees.

are baseless and, indeed, quite far-fetched.  This Court should not be a venue for Mr. Alfaro

to exercise a personal grudge without regard for the rules and procedures essential to these

proceedings.

### V.  Conclusion

Based on the foregoing, it is

**RECOMMENDED**:

1.      That the case be **DISMISSED with prejudice** as a sanction for Plaintiffs' willful

failure to participate in discovery and comply with the Court's Orders.

2.      That all pending motions be **DENIED as moot**.

3.      That the Clerk of Court be directed to close the file.

**RESPECTFULLY RECOMMENDED** at Jacksonville, Florida on February 24, 2017.


*James R. Klindt*
**JAMES R. KLINDT**
United States Magistrate Judge


clr
Copies to:

The Honorable Timothy J. Corrigan
United States District Judge

Counsel of Record
Pro se parties

Gabrielly G. Valenzano
Valenzano Law Firm, P.A.
18710 SW 107th Avenue, Suite 27
Miami, FL 33157

30